# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

HER RESILIENCY CENTER, INC., *et al.*,          \*

          *Plaintiffs*,          \*

      v.          \*          No. 1:26-cv-00582-BAH

                    \*

WES MOORE, *et al.*,          \*

          *Defendants*.          \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

ANTHONY G. BROWN
Attorney General of Maryland

<u>/s/ Jeffrey S. Luoma</u>
JEFFREY S. LUOMA
Federal Bar No. 30791
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
jluoma@oag.maryland.gov
(410) 576-6441
(410) 576-6955 (facsimile)

February 19, 2026

Attorneys for Defendants the Honorable Wes Moore, Dorothy Lennig, and the State of Maryland.

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

FACTS ALLEGED IN THE COMPLAINT ........................................................... 1

ARGUMENT ......................................................................................................... 4

I.      PLAINTIFFS' CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST
        ENRICHMENT ARE BARRED BY SOVEREIGN IMMUNITY. .............................. 6

II.     DEFENDANTS MOORE AND LENNIG HAVE STATE PERSONNEL
        IMMUNITY IN THEIR INDIVIDUAL CAPACITY AGAINST THE
        CONTRACT CLAIMS. ....................................................................................... 7

III.    DEFENDANTS HAVE IMMUUNITY AGAINST THE STATE
        CONSTITUTIONAL TORT CLAIMS. .................................................................. 9

IV.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED. ........................................................................... 10

        1.      Counts I-III (Violation of VOCA). .................................................. 12

        2.      Counts IV-VI (Breach of Contract). ................................................ 13

        3.      Counts VII-IX (Promissory Estoppel). ........................................... 16

        4.      Counts X-XII (Unjust Enrichment). ................................................ 17

        5.      Counts XIII-XV (Mandamus). ......................................................... 18

        6.      Counts XVI-XVIII (Violation of Md. Decl. Rights art.
                40). .................................................................................................... 19

        7.      Counts XIX-XX (42 U.S.C. § 1983 Claim for Violation
                of First Amendment). ....................................................................... 21

        8.      Counts XXI-XXIII (Unconstitutional Conditions). ......................... 21

        9.      Counts XXIV-XXV (42 U.S.C. § 1983 Claim for
                Violation of VOCA). ........................................................................ 22

CONCLUSION ..................................................................................................... 23

CERTIFICATE OF SERVICE .............................................................................. 25

i

Defendants the Honorable Wes Moore, Governor of Maryland, Dorothy Lennig, Executive Director of the Governor's Office of Crime Prevention and Policy, and the State of Maryland, by undersigned counsel, file this Memorandum of Law in Support of their Motion to Dismiss.

## INTRODUCTION

This case arises out of a grant agreement between the State of Maryland and Plaintiff HER Resiliency Center, Inc. ("HER"). (ECF 1, Exhibit 1 ("complaint"), at ¶ 20.) Defendants Governor Moore and Ms. Lennig, in either their official or individual capacities, were not parties to the grant, nor was Plaintiff Natasha Guynes. Plaintiffs allege that HER spent its own money providing services to crime victims and was wrongfully denied reimbursement by the State under the grant. (Complaint, at ¶¶ 21-23.) The complaint presents 25 counts stemming from the alleged non-reimbursement.

On October 29, 2025, Plaintiffs filed their complaint in the Circuit Court for Baltimore City. Plaintiffs served the defendants on January 13, 2026. (ECF 1, Exhibits 2-4.) On February 12, 2026, Defendants removed the case to this Court. (ECF 1.)

## FACTS ALLEGED IN THE COMPLAINT

HER is a corporation organized under the laws of Washington, DC, and Ms. Guynes is its founder and CEO. (Complaint, at ¶¶ 1, 12.) HER received a grant award from the State of Maryland for funds under the federal Victims of Crimes Act ("VOCA").

(Complaint, at ¶¶ 20, 78.)[1]  VOCA is a federal law that provides funding to assist victims of crime.  (Complaint, at ¶ 17.)  States administer VOCA funds, and the Maryland Governor's Office of Crime Prevention and Policy ("GOCPP") is the state office responsible for carrying out that role in Maryland.  (Complaint, at ¶¶ 17, 19.)

At dates not specified in the complaint,[2] HER applied for VOCA funds and was awarded them as reimbursement for eligible expenses spent in providing services to crime victims.  (Complaint, at ¶ 20.)  HER subsequently spent its own funds to provide services not specified in the complaint, during a date range not specified in the complaint, to crime victims and submitted, at a date not specified in the complaint, all required documentation to the State to seek reimbursement.  (Complaint, at ¶¶ 21-22.)

The State allegedly failed to reimburse HER for eligible expenses totaling $218,861.11.  (Complaint, at ¶¶ 23, 26.)  On August 22, 2025, Ms. Guynes emailed Ms. Lennig requesting reimbursement of those funds.  (Complaint, at ¶ 26.)  Ms. Guynes allegedly has previously, on unspecified dates, reached out to Governor Moore's office "to address the funding issues on multiple occasions."  (Complaint, at ¶ 26.)  On at least one occasion, in August 2024, the Governor's office responded that it had "complete faith in Ms. Lennig's leadership."  (Complaint, at ¶ 26.)

---

[1] Throughout the complaint, Plaintiffs use different words to describe the grant, including "agreement," "grant," and "contract."

[2] The complaint leaves out dates of many of the alleged events, and also does not arrange the alleged facts chronologically, making the timing and order of alleged events difficult to ascertain.

Allegedly, the State "now" claims that 55% of HER's clients are not eligible for VOCA-funded services, whereas the State previously determined that the same clients or types of clients were eligible.  (Complaint, at ¶ 23.)  No date is specified for the alleged change in the State's position but, as a result of that change, GOCPP "suddenly refused to fund more than 45% of each staff member's salary.  (Complaint, at ¶ 23.)  (Presumably, the complaint is referring to HER "staff members.")  The complaint asserts that "GOCPP has not provided any explanation for how it arrived at this 55 percent figure or why it suddenly came to believe that 55 percent of the women HER serves fall outside the definition of a crime victim or why it reached this decision in FY 2025 . . . ."  (Complaint, at ¶ 24.)  GOCPP also allegedly "reduced total amount of funding it provided to HER by 25 percent."  (Complaint, at ¶ 25.)

The complaint asserts that "GOCPP took these actions only after HER had begun to shine a light on how GOCPP had been acting arbitrarily in ways that were harming victims of crime."  (Complaint, at ¶ 27.)  The complaint is unclear what specifically "these actions" include—they may refer to the non-reimbursement, the refusal to pay more than 55% of staff salaries, the alleged reduction of total HER funding by 25%, or other alleged actions such as "arbitrary denials of [unspecified] budget modifications," "a seemingly endless audit" at an unspecified time, or "a range of other obstacles . . . ."  (Complaint, at ¶ 27.)

"[S]oon after HER started making her [sic] case in the media and exposing the wrongdoing to elected officials, her [sic] scores and funding were suddenly slashed."  (Complaint, at ¶ 27.)  The complaint does not detail what actions "making her case in the media" consisted of, or dates when such actions occurred.  But, in or around January 2024,

Ms. Guynes began contacting elected officials "about GOCPP's actions" and since September 2024, Ms. Guynes has made social media comments "identifying issues with GOCPP, Defendant Moore, and Defendant Lennig." (Complaint, at ¶¶ 27-30.) No further details about the content or timing of those comments is given.

In April 2025, GOCPP allegedly denied a budget modification for HER after repeatedly returning the funding request for revisions. (Complaint, at ¶ 31.) The initial request was made in February 2025, and HER had already expended the funds for victim services. (Complaint, at ¶ 31.)

According to the complaint, an unnamed "individual on Defendant Moore's staff" described, at an unspecified time and to an unspecified audience, Ms. Guynes's social media posts as "becoming a problem." (Complaint, at ¶ 32.)

The complaint alleges that, due to Defendants' actions, "HER has suffered direct financial loss of $218,861.11 and a much greater amount in indirect financial loss as well as having suffered a chilling effect on their [sic] exercise their [sic] exercise of free speech rights under both the United States and State of Maryland Constitutions." (Complaint, at ¶ 33.)

**ARGUMENT**

The complaint asserts 25 causes of action:

Counts I-III (Violation of VOCA) against defendants State of Maryland, Moore, and Lennig, respectively;[3]

- Counts IV-VI (Breach of Contract) against defendants State of Maryland, Moore, and Lennig, respectively;

- Counts VII-IX (Promissory Estoppel) against defendants State of Maryland, Moore, and Lennig, respectively;

- Counts X-XII (Unjust Enrichment) against defendants State of Maryland, Moore, and Lennig, respectively;

- Counts XIII-XV (Mandamus) against defendants State of Maryland, Moore, and Lennig, respectively;

- Counts XVI-XVIII (Violation of Md. Decl. Rights art. 40) against defendants State of Maryland, Moore, and Lennig, respectively;

- Counts XIX-XX (42 U.S.C. § 1983 claim for Violation of First Amendment) against defendants Moore and Lennig, respectively;

- Counts XXI-XXIII (Unconstitutional Conditions) against defendants State of Maryland, Moore, and Lennig, respectively; and

- Counts XXIV-XXV (42 U.S.C. § 1983 claim for Violation of VOCA) against defendants Moore and Lennig, respectively.

---

[3] The complaint describes itself as being against Governor Moore and Ms. Lennig in both their official and individual capacities. (*See* Complaint, at caption, opening unnumbered paragraph on page 1, and ¶¶ 3 and 4.) The causes of action against Governor Moore and Ms. Lessig, however, do not specify whether they are against them in their individual or official capacities.

As explained below, all of the claims should be dismissed.

## I.    PLAINTIFFS' CLAIMS FOR PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT ARE BARRED BY SOVEREIGN IMMUNITY.

The "sovereign immunity" doctrine "prohibits suits against the State or its entities absent its consent." *Magnetti v. University of Maryland*, 402 Md. 548, 557 (2007). The doctrine applies to contract claims: "[N]o contract or tort suit can be maintained" against a State entity or official "unless the General Assembly has specifically waived the doctrine." *Id.* (quoting *Stern v. Board of Regents*, 380 Md. 691, 701 (2004)).

The General Assembly created a limited waiver of sovereign immunity for contract actions:

> Except as otherwise expressly provided by a law of the State, the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee.

Md. Code Ann., State Gov't § 12-201(a). "[S]ince the General Assembly should not be deemed lightly to give away the State's immunity," the waiver in § 12-201(a) "must be strictly construed." *Department of Pub. Safety and Corr. Servs.*, 107 Md. App. 445, 457 (1995) (citations omitted).

Plaintiffs' only "contract action . . . based on a written contract" against Defendants is the claim for breach of contract in Counts IV-VI. Thus, that claim falls within the statutory waiver of sovereign immunity.

By contrast, Plaintiffs claims for promissory estoppel (Counts VII-IX) and unjust enrichment (Counts X-XII) do not fall within the waiver. The statutory waiver does not

"contemplate[] a contract that arises through the vehicle of promissory estoppel." *Maryland Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Maryland Transp. Auth.*, 195 Md. App. 124, 220 (2010), *rev'd on other grounds*, 420 Md. 141 (2011).  Similarly, sovereign immunity is not waived for unjust enrichment claims:

> Recovery for unjust enrichment is based upon an implied in law contract. The two concepts of sovereign immunity and unjust enrichment are incompatible.  However meritorious a claim based upon an implied contract may be, if that claim is against the State or any of its agencies, it is barred because it is not based upon a written contract.

*Id.* (brackets and citation omitted).  Thus, Plaintiffs' claims for promissory estoppel and unjust enrichment as against the State and against Governor Moore and Ms. Lennig in their official capacities are barred by statutory immunity and must be dismissed.

## II.    DEFENDANTS MOORE AND LENNIG HAVE STATE PERSONNEL IMMUNITY IN THEIR INDIVIDUAL CAPACITY AGAINST THE CONTRACT CLAIMS.

The statutory waiver of sovereign immunity for "contract actions" also declares that "in an action under this subtitle, the State and it officers . . . shall have the immunity from liability described under § 5-522(d) of the Courts Article."   State Gov't § 12-201(b). Section 5-522(b) of the Courts and Judicial Proceedings Article, in turn, states:

> State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.

"State personnel" includes Governor Moore and Ms. Lennig.  State Gov't § 12-101(a)(1).  As a result, Governor Moore and Ms. Lennig could only face liability for

actions within the scope of their work as State officials if they acted with malice or gross negligence. The complaint does not properly allege either.

Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). Malice "is defined as behavior 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will, or fraud.'" *Newell v. Runnels*, 407 Md. 578, 636 (2009) (quoting *Barbre*, 402 Md. at 182).

The complaint alleges no facts that could support a finding of malice or gross negligence by Governor Moore or Ms. Lennig. The complaint repeatedly states that "Defendant's actions were done with malice and intent to limit criticism against the current gubernatorial administration." (Complaint, at ¶¶ 240, 256, 272, 285, 299, 309, 321, 331, 341, 351.) Such conclusory allegations of malice are insufficient to survive a motion to dismiss. *See, e.g.*, *Kleger v. Dorchester County*, Case No. 1:24-CV-00095-JMC, 2024 WL 3555044, *11 (D. Md. July 23, 2024) ("Bare legal conclusions regarding malice are not binding on the court.") (quotation marks and citation omitted); *Francis v. Maryland*, Case No. 1:21-cv-01365-ELH, 2024 WL 1156407, *22 (D. Md., March 18, 2024) ("Even at the motion to dismiss stage, the plaintiff must allege with some clarity and precision those facts which make the act malicious.") (quotation marks and citation omitted).

## III.   DEFENDANTS HAVE IMMUNITY AGAINST THE STATE CONSTITUTIONAL TORT CLAIMS.

Counts XVI, XVII, and XVIII allege state constitutional torts against Defendants based on alleged violation of Article 40 of the Declaration of Rights in the Maryland Constitution.  These claims are barred by statutory immunity because Plaintiffs have not satisfied the Maryland Tort Claims Act ("MTCA").

The alleged violation of Article 40 is a constitutional tort.  *Newell*, 407 Md. at 640 n.28.  The MTCA "provides a limited waiver of sovereign immunity and is the sole means by which the State of Maryland and its personnel may be sued in tort."  *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (quotation marks and citation omitted).  The MTCA applies to constitutional torts as well as common law torts.  *Williams v. Morgan State Univ.*, 484 Md. 534, 550 (2023) (citation omitted).  For the waiver to apply, a plaintiff must, before filing a lawsuit, submit a written claim to the Maryland Treasurer within one year of the incident which is the basis for the claim.  State Gov't § 12-106(b)(1).  This "notice requirement is mandatory, so that failure to provide the requisite notice bars any suit against the State."  *Williams v. Maryland Dep't of Human Res.*, 136 Md. App. 153, 177 (2000); *see also Johnson v. Maryland State Police*, 331 Md. 285, 290 (1993) (explaining that notice requirement under MTCA is a "condition precedent" to filing suit under the Act).

The complaint does not allege that Plaintiffs submitted a claim notice to the Maryland Treasurer.  Accordingly, due to the failure to plead compliance with the MTCA notice requirements, there is no waiver of state sovereign immunity with respect to Counts

XVI, XVII, and XVIII against the State or against Governor Moore or Ms. Lennig in their official capacity. As a result, those counts should be dismissed. *See Hansen v. City of Laurel*, 420 Md. 670, 684, 694 (2011) (explaining that "a plaintiff must plead affirmatively satisfaction of a condition precedent" and that a complaint that fails to do so "is subject to a motion to dismiss" for "failure to state a claim upon which relief can be granted"); *Daulatzai v. Maryland*, 556 F. Supp. 3d 536, 544 (D. Md. 2021) (dismissing complaint against State of Maryland where plaintiff did not plead compliance with MTCA).

In addition to being immune against the constitutional tort claims in their official capacity, Governor Moore and Ms. Lennig are also immune, under the MTCA, in their individual capacity. The MTCA grants immunity to state employees acting in the scope of their employment. Specifically, State Government Article § 12-105 provides: "State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article." As explained above with regard to immunity for contract claims, Governor Moore and Ms. Lennig are entitled to immunity under § 5-522(b) because the complaint does not allege that they acted outside the scope of their work as State officials and also does not allege any specific facts to support the conclusory claims that they acted with malice.

## IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE DEFENDANTS UPON WHICH RELIEF CAN BE GRANTED.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim should be granted when "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc., v.*

*Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Courts should accept "as true all of the well-pleaded allegations and [view] the complaint in the light most favorable to the non-moving party." *Lesueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). This Court, however, may disregard conclusions of law or unwarranted deductions of fact because the purpose of a Rule 12(b)(6) motion is to determine legal sufficiency of the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must allege something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The purpose of the pleading requirement is "to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal v. Rowe Price-Fleming Intern.*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

1.  *Counts I-III (Violation of VOCA)*

Counts I-III (Violation of VOCA) should be dismissed because VOCA does not create a private cause of action. Counts II and III, against Governor Moore and Ms. Lennig, respectively, should also be dismissed as against them in their individual capacity because neither Governor Moore nor Ms. Lennig, as individuals, have any legal obligation under VOCA that was violated.

"[I]f a statute does not expressly create a private cause of action, one does not exist." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 805 (4th Cir. 1996). Without congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

Here, Counts I-III seek relief for an alleged violation of VOCA, a federal law, but Plaintiffs cite no statute or other legal authority indicating a private cause of action exists under which they may bring such a claim. Accordingly, Counts I-III should be dismissed because they state no valid claim for relief.

Despite being labeled as claims for "Violation of the Victim of Crimes Act," Counts I-III also allege that "the State" violated § 11-934 of the Maryland Criminal Procedure Article. (Complaint, at ¶¶ 46, 60, 74.) And despite Counts II and III being against Governor Moore and Ms. Lennig, respectively, those two counts still include the allegation that "the State" violated § 11-934, so it is unclear whether Plaintiffs intend to allege that only the State violated this § 11-934, or whether this violation is intended to be the basis for the cause of action. Regardless of Plaintiffs' intent with their claims, no cause of action

exists for violations of § 11-934 because the statute creates no cause of action and, under Maryland law, a "private cause of action in favor of a particular plaintiff or class of plaintiffs does not exist simply because a claim is framed that a statute was violated and a plaintiff or class of plaintiffs was harmed by it." *Baker v. Montgomery County*, 427 Md. 691, 708-09 (2012).

Even if a cause of action existed for violating VOCA, any such claim should be dismissed as against Governor Moore and Ms. Lennig in their individual capacities. Count II against Governor Moore and County III against Ms. Lennig seem to indicate that they are only against them in their official capacities. (Complaint, at ¶¶ 54, 68.) Moreover, nothing in the complaint suggests any legal duty that either Governor Moore or Ms. Lennig has, in their individual capacity, under VOCA that could in any way support a cause of action. Since the Counts are not explicit, however, as to official versus individual capacity, the claims should be dismissed as against Governor Moore and Ms. Lennig in their individual and official capacities.

### 2. *Counts IV-VI (Breach of Contract)*

Counts IV, V, and VI are for breach of contract against the State, Governor Moore, and Ms. Lennig, respectively. The complaint, however, fails to state any claim for breach of contract upon which relief can be granted.

To state a breach of contract claim, a complaint must allege "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Here, the complaint does not clearly identify the contract upon which its claims are based. Nor does the complaint detail

the exact contract provision(s) which Defendants allegedly breached.  Rather, the complaint offers only the threadbare assertions that "HER and the State of Maryland entered into an agreement whereby the State of Maryland would reimburse HER for eligible expenses incurred in providing services to crime victims under VOCA," HER spent its own funds to "to provide services to crime victims that were eligible for reimbursement," and "the State of Maryland has failed and refused to reimburse HER for the eligible expenses."  (Complaint, at ¶¶ 20, 21, 23; *see also* ¶¶ 77-80, 82.)

The complaint does not offer any detail as to what "expenses" or "services" are "eligible" for reimbursement under the agreement, or what persons count as "crime victims" for purposes of the agreement.  Plaintiffs could have attached the relevant agreement as an exhibit to the complaint, or could have at least quoted or even paraphrased the specific provisions alleged to be at issue, but they did not do so.  Moreover, Plaintiffs could describe the "services" they provided, the "expenses" they incurred, and the "crime victims" they assisted, but they did not do so.

Plaintiffs even assert that the State "now contends that 55 percent of the clients of HER are not eligible for services under VOCA," (Complaint, at ¶ 23), but they do not state whether this action by the State constituted an alleged breach or, instead, is just a decision with which Plaintiffs disagree.  Such lack of detail in the complaint does not support a claim for breach of contract.  *See RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655 (2010) ("It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation

by defendant.") (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (1977)) (emphasis in original); *see also Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 623 (D. Md. 2014) (quoting *RRC Northeast* and pointing out plaintiff's failure to "identify which contract provision Defendant purportedly breached"). "Moreover, in considering the sufficiency of a complaint alleging breach of contract, 'any ambiguity or uncertainty in the allegations is to be construed against the pleader.'" *Chambers*, 43 F. Supp. 3d at 623 (quoting *RRC Northeast*, 413 Md. at 655).

Further counts V and VI, against Governor Moore and Ms. Lennig, fail to state a claim, and should therefore be dismissed, because the complaint does not allege that Governor Moore or Ms. Lennig are, or were, parties to any contract with Plaintiffs. In Counts IV, V, and VI, the complaint says: "HER and *the State of Maryland* entered into a valid contract." (Complaint, at ¶¶ 77, 88, 101 (emphasis added).) Thus, a contract is alleged only between HER and the State.

Since the complaint fails to allege that either Governor Moore or Ms. Lennig were parties to a contract with Plaintiffs, it cannot properly allege that either breached a contract. The complaint alleges, in Counts IV, V, and VI, that "*[t]he State of Maryland* breached the contract by failing to reimburse HER for eligible expenses as required by the terms of the contract." (Complaint, at ¶¶ 83, 94, 107 (emphasis added).) Thus, the complaint alleges breach, by the State, of the contract between the State and HER.

The complaint, however, goes further. In Count V, against Governor Moore, it alleges that "Defendant Moore breached the contract by failing to ensure that the state fulfills its contractual obligations to reimburse HER for eligible expenses." (Complaint, at

¶ 96.) Likewise, in Count VI against Ms. Lennig, it alleges that "Defendant Lennig breached the contract by failing to ensure that the state fulfills its contractual obligations to reimburse HER for eligible expenses." (Complaint, at ¶ 109.) This creative legal theory—that a person who is not a party to a contract can breach the contract—is offered with no supporting authority, and should be rejected. Accordingly, since the complaint fails to allege that Governor Moore or Ms. Lennig were parties to the contract, Counts V and VI should be dismissed.

### 3. Counts VII-IX (Promissory Estoppel)

Counts VII-IX fail to state claims for promissory estoppel and should therefore be dismissed. A claim for promissory estoppel includes four elements:

> 1. a clear and definite promise; 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; 3. which does induce actual and reasonable action or forbearance by the promisee; and 4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996) (quoting Restatement (Second) of Contracts § 90(1) (1979)).

Counts VIII and IX, against Governor Moore and Ms. Lennig respectively, fail to state a claim because, akin to the breach of contract claims, they fail to allege a promise made by Governor Moore or Ms. Lennig upon which Plaintiffs relied. Instead, both counts allege that "[t]he State promised to reimburse HER." (Complaint, at ¶¶ 127, 142.) Both counts also allege that the State "could reasonably foresee that" HER would rely on the promise. (Complaint, at ¶¶ 132, 133, 147, 148.) Since Counts VIII and IX fail to allege

the requisite elements needed to support promissory estoppel against Governor Moore or Ms. Lessig, those counts should be dismissed.

Further, the claims for promissory estoppel should be dismissed against all defendants because promissory estoppel is a quasi-contract claim and "'[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Ver Brycke v. Ver Brycke*, 379 Md. 669, 693 n.9 (2004) (quoting *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000)). Here, as alleged in the complaint, there is a contract between HER and the State, so the claims for promissory estoppel cannot arise.

### 4. Counts X-XII (Unjust Enrichment)

Plaintiffs' claims for unjust enrichment against all defendants should be dismissed because unjust enrichment, like promissory estoppel, is a quasi-contract claim and Plaintiffs' claims for unjust enrichment concern the same subject matter as the written grant agreement between the parties. *Ver Brycke*, 379 Md. at 693 n.9. To be sure, "an unjust enrichment claim ordinarily fails if the claim is based on a written contract." *Id.* Accordingly, Plaintiffs fail to state a claim for unjust enrichment against Defendants.

In addition, Plaintiffs' claims for unjust enrichment fail to allege all of the necessary elements as against Governor Moore and Ms. Lennig. A claim for unjust enrichment must include:

> 1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make

17

it inequitable for the defendant to retain the benefit without the payment of
its value.

*Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007).

Plaintiffs allege that HER conferred "on the State of Maryland" the benefit of
services to victims of crimes. (Complaint, at ¶¶ 154-56, 168-70, 182-84.) Plaintiffs do not
allege that any benefit was conferred upon Governor Moore or Ms. Lennig. In addition,
the complaint alleges that the State, not Governor Moore or Ms. Lennig, knew of and
accepted the benefit. (Complaint, at ¶¶ 157, 161, 171, 175, 185, 189.) As a result, Plaintiffs
fail to state claims for unjust enrichment against Governor Moore or Ms. Lennig.

5. *Counts XIII-XV (Mandamus)*

Common law mandamus is "an extraordinary remedy" that is "generally used to
compel inferior tribunals, public officials or administrative agencies to perform their
function . . . which in its nature is imperative and to the performance of which duty the
party applying for the writ has a clear legal right." *Goodwich v. Nolan*, 343 Md. 130, 145
(1996) (quotation marks and citation omitted). Mandamus is generally not available where
the government action at issue involves discretion. *Id.* Rather, the duty to act must be
"purely ministerial." *Falls Road Cmty. Ass'n v. Baltimore County*, 437 Md. 115, 139-40
(2014).

Plaintiffs ask that the Court exercise mandamus power to compel the State to
reimburse expenses to HER. (Complaint, at ¶¶ 201-02, 211-12, 221-22.) As explained
herein regarding the other claims for relief, Plaintiffs have no "clear legal right" to the
requested reimbursement. For that reason, the complaint fails to state a valid claim for

mandamus relief.  In addition, mandamus "will not lie if there is any other adequate and convenient remedy."  *Goodwich*, 343 Md. at 145 (brackets and citation omitted).  If Plaintiffs succeed on any of their claims for reimbursement in this case, an adequate remedy exists in the form of a monetary judgment.  Thus, Plaintiffs' claims for mandamus are inappropriate under the facts of this case and should be dismissed.

6. *Counts XVI-XVIII (Violation of Md. Decl. Rights art. 40)*

Counts XVI-XVIII are based on Plaintiffs' theory that Defendants retaliated against them for exercising the freedom of speech.  Plaintiffs alleged that they posted, on social media, messages critical of GOCPP and that "the State" then "took adverse action" against Plaintiffs, in the form of stopping reimbursement of funds to HER as retaliation for Plaintiffs' social media posts.  (Complaint, at ¶¶ 227-234.)  In Count XVII, against Governor Moore, the complaint alleges that the State took action against Plaintiffs "at the direction of Defendant Moore."  (Complaint, at ¶ 247.)  Later, in Count XVIII against Ms. Lennig, the complaint states that the State took action against Plaintiffs "at the direction of Defendant Lennig."  (Complaint, at ¶ 263.)

The complaint fails to plead a valid claim for retaliation based on free speech. Article 40 of the Declaration of Rights in the Maryland Constitution protects the freedom of speech.  "Article 40 is read generally *in pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 414 Md. 585, 593 n.5 (2010) (citation omitted).  To demonstrate retaliation for freedom of speech, Plaintiffs must allege (1) that they engaged in protected speech, (2) that Defendants took adverse action that affected their right of free speech, and (3) "there was a causal relationship between her protected activity and the

defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (quoted in *State v. Gaskill*, 2026 WL 124458, *7 (App. Ct. Md. January 16, 2026)).  To establish a causal connection, a plaintiff must show that the speech was a "substantial" or "motivating" factor in the defendants' action.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977) (quoted in *Gaskill*, 2026 WL 124458, *7).

In the Article 40 claims against the State, Governor Moore, and Ms. Lennig, Plaintiffs allege that the "Defendant State of Maryland" took adverse action against Plaintiffs by not reimbursing HER.  (Complaint, at ¶¶ 231, 247, 263.)  Thus, Plaintiffs immediately fail to state a claim against Governor Moore or Ms. Lennig since it is the State, not either of them, that allegedly took adverse action.  Accordingly, Counts XVII and XVIII should be dismissed for failing to state a claim.

Plaintiffs also fail to adequately allege a causal connection between their speech and the alleged adverse action.  Plaintiffs state, in conclusory fashion, that "[t]he adverse action was motivated by Plaintiffs' protected speech."  (Complaint, at ¶¶ 234, 251, 267.)  The only specific factual allegations that Plaintiffs offer in support of that claim is that "[t]he termination of funding occurred shortly after Plaintiffs' social media posts and letters to public officials criticizing" GOCPP.  (Complaint, at ¶¶ 235, 250, 266.)  These facts, even if true, are not sufficient to support a causal connection.  First, Plaintiffs do not allege that the State, Governor Moore, or Ms. Lennig were even aware of Plaintiffs' social media posts or letters.  *See Constantine*, 411 F.3d at 501 (explaining that "plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected

activity"). Second, Plaintiffs assert that the State terminated funding "shortly after" the posts, but Plaintiffs do not specifically quantify "shortly after" and do not allege a specific date on which funding was terminated. Thus, it is not possible, from the facts alleged, to determine any time period after the alleged funding termination that could support a causal connection.

### 7. *Counts XIX-XX (42 U.S.C. § 1983 Claim for Violation of First Amendment)*

Counts XIX and XX assert against Governor Moore and Ms. Lennig, respectively, claims under 42 U.S.C. § 1983 for, seemingly, retaliation for speech by Plaintiffs. In effect, they repeat the free speech retaliation claims in Counts XVII and XVIII and therefore fail to state a claim for the same reasons given for those counts.

### 8. *Counts XXI-XXIII (Unconstitutional Conditions)*

The unconstitutional conditions doctrine declares that "the government may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Taxation Without Representation of Washington*, 461 U.S. 540, 545 (1983). Plaintiffs' claims for unconstitutional conditions mirror their free speech retaliation claims. They claim that "[t]he State of Maryland" conditioned reimbursement to HER on Plaintiffs not criticizing GOCPP. (Complaint, at ¶¶ 302-03, 313-14, 324-25.) Thus, Plaintiffs fail to state a claim against Governor Moore or Ms. Lennig since it is the State, not either of them, that allegedly placed unlawful conditions on the reimbursement to HER. As a result, Count XXII, against Governor Moore, and Count XXIII, against Ms. Lennig, should be dismissed.

More broadly, Plaintiffs have failed to adequately plead that reimbursement of funds to HER was subject to any condition about Plaintiffs' speech. Plaintiffs point to no condition in the written grant agreement between HER and the State that limits Plaintiffs' speech. Instead, they attempt to impute an implied condition based on the State's denial of reimbursement based allegedly on Plaintiffs' speech. This would require establishing the existence of some sort of causal connection between Plaintiffs' speech and the State's denial of reimbursement. For the reasons described in response to Plaintiffs' free speech retaliation claims above, the complaint fails to adequately plead specific facts supporting any such causal connection. Thus, all three counts for unconstitutional conditions should be dismissed.

### 9. XXIV-XXV (42 U.S.C. § 1983 Claim for Violation of VOCA)

In Counts XXIV and XXV, Plaintiffs assert claims under 42 U.S.C. § 1983 against Governor Moore and Ms. Lennig for allegedly depriving HER of its right to reimbursement under VOCA. (Complaint, at ¶¶ 333-35, 343-45.) The two counts should be dismissed for failing to state a claim because they do not allege facts showing that Governor Moore or Ms. Lenning denied HER any right under federal law.

"To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Here, Plaintiffs base their § 1983 claims on a right of HER, that is supposedly secured by VOCA, to reimbursement from the State of Maryland. The complaint, however, plainly asserts that HER's alleged right to reimbursement results from a grant funding agreement with the State. (Complaint, at ¶ 20.) While some GOCPP grant funds may originate from the federal government pursuant to VOCA, Plaintiffs cite no provision in VOCA itself that entitles HER to any money from the State. Since VOCA itself does not give HER any right under federal law to reimbursement, Governor Moore and Ms. Lennig did not, and indeed could not, deprive Plaintiffs of such right under federal law. Counts XXIV and XXV, therefore, should be dismissed for failing to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss this complaint with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Jeffrey S. Luoma

_____

JEFFREY S. LUOMA
Federal Bar No. 30791
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202
jluoma@oag.maryland.gov
(410) 576-6441
(410) 576-6955 (facsimile)

February 19, 2026                    Attorneys for Defendants the Honorable
                                     Wes Moore, Dorothy Lennig, and the
                                     State of Maryland.

**CERTIFICATE OF SERVICE**

I certify that, on this 19th day of February, 2026, the foregoing was served by CM/ECF on registered users.

/s/ Jeffrey S. Luoma

_____

Jeffey S. Luoma