**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| HER RESILIENCY CENTER, INC., ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 26-582-BAH |
| WES MOORE ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

This case arises out of a grant agreement between the State of Maryland (the "State") and HER Resiliency Center, Inc. ("HER"). Plaintiffs HER and Natasha Guynes ("Guynes")[1] (together, "Plaintiffs") bring suit against Governor Wes Moore, in his individual and official capacity, the Executive Director of the Governor's Office of Crime Prevention and Policy, Dorothy J. Lennig ("Lennig"), in her individual and official capacity,[2] and the State (collectively "Defendants") alleging twenty-five counts of various violations of federal constitutional and statutory law and Maryland constitutional and common law. *See* ECF 3. Pending before the Court is Defendants' motion to dismiss the complaint. ECF 8. Plaintiffs filed an opposition, ECF 11, and Defendants

[1] On August 3, 2026, Plaintiffs' counsel filed a notice of death, stating that Guynes passed away on May 16, 2026. ECF 13, at 1. The notice also states that an estate was opened for her on July 13, 2026. *Id.* After such a notice is filed and served, a motion for substitution must be made "within 90 days after service of a statement noting the death." Fed. R. Civ. P. 25(a)(1). Otherwise, the action by the decedent "must be dismissed." *Id.*

[2] Although the complaint describes itself as bringing claims against the aforementioned Defendants in both their individual and official capacities, the counts asserted do not specify whether they are against such Defendants in their individual or official capacities, or both.

filed a reply, ECF 12. All filings include memoranda of law, and Defendants' reply includes an exhibit.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. Specifically, counts IV (alleging a breach of contract) and XX (alleging a First Amendment 42 U.S.C. § 1983 count) survive Defendants' motion.

## I. BACKGROUND

"HER is a non-profit organization that provides services to victims of crime in accordance with the federal Victims of Crime Act," also known as "VOCA." ECF 3, at 4 ¶ 11. It operates in both Maryland and Washington, D.C. *Id.* at 5 ¶ 18. HER "provides services to women who are victims of abuse, assault, domestic violence, kidnapping, stalking, sexual assault, sexual trafficking, are otherwise vulnerable to victimization." *Id.* at 4 ¶ 13. Guynes founded and was the CEO of HER. *Id.* ¶ 12; *see also id.* at 5 ¶ 16 (describing the "range of services" HER provides "to the women it serves"). Guynes herself survived "exploitation, childhood abuse, and complex trauma." *Id.* at 4–5 ¶ 15.

HER describes VOCA as "a federal law that provides funding to states to support crime victim assistance, which is then administered by designated state agencies." *Id.* at 5 ¶ 17. HER alleges that its operations in both Maryland and D.C. "are governed by VOCA," but VOCA's "interpretation" in each jurisdiction is "vastly different." *Id.* ¶ 18. In Maryland, HER contends that the State "is responsible for administering VOCA funds at the state level through its designated state agency," the Governor's Office of Crime Prevention and Policy ("GOCPP"). *Id.* at 5–6 ¶ 19. HER avers that it "applied for and was approved to receive VOCA funds as reimbursement for

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

eligible expenses incurred in providing services to crime victims" and has been "receiving such funds since at least fiscal year 2020." *Id.* at 6 ¶ 20.

HER alleges that it and the State "entered into an agreement whereby the State of Maryland would reimburse HER for eligible expenses incurred in providing services to crime victims under VOCA." *Id.* "In reliance on this agreement, HER expended its own funds to provide services to crime victims that were eligible for reimbursement under VOCA." *Id.* ¶ 21. HER alleges that it has "submitted all required documentation to the State of Maryland for reimbursement of these eligible expenses." *Id.* ¶ 22. However, "[d]espite HER's compliance with all requirements for reimbursement," HER alleges that the State "now contends that 55 percent of the clients of HER are not eligible for services under VOCA despite the previous determination that the same clients and types of clients were eligible for services under VOCA." *Id.* ¶ 23. These clients, HER asserts, "are victims of human trafficking, sexual exploitation, and domestic violence." *Id.*

"Despite multiple requests," HER asserts that "GOCPP has not provided any explanation for how it arrived at this 55 percent figure or why it suddenly came to believe that 55 percent of the women HER serves fall outside the definition of a crime victim or why it reached this decision in FY 2025 when it had reached a different decision about the same set of services in each of the past several years." *Id.* at 7 ¶ 24; *see also id.* ¶ 26 (describing an email request for reimbursement sent by Guynes to Lennig that "was ignored"). "In addition to the 45 percent cap for salaries, GOCPP reduced the total amount of funding it provided to HER by 25 percent." *Id.* ¶ 25. HER contends that "GOCPP took these actions only after HER had begun to shine a light on how GOCPP had been acting arbitrarily in ways that were harming victims of crime." *Id.* ¶ 27. Such actions include, according to HER, "arbitrary denials of budget modifications with ever-changing rationales, a seemingly endless audit of HER that turned up no wrongdoing but during which

GOCPP froze access to HER funds for so long that it was pushed to the edge of insolvency, and a range of other obstacles placed in the path of HER's work on behalf of victims." *Id.*

In 2024, Guynes began to complain about GOCPP's actions by contacting elected officials and on social media. *See id.* at 8 ¶¶ 28–30. HER alleges that "[a]t least one individual on [Governor] Moore's staff identified" Guynes' "social media posts as 'becoming a problem.'" *Id.* ¶ 32. "In April 2025, GOCPP denied a budget modification for HER after returning the funding request nine times for revisions." *Id.* ¶ 31. "The initial funding request was made in February 2025. Issues with the request included denial of positions previously approved such as the fact that the approved 'Job Coach' position was not the same as the submitted 'Professional Development Coach.'" *Id.* HER ultimately alleges that it has lost "$218,861.11" directly, and more indirectly, in addition to "having suffered a chilling effect on their exercise [] of free speech rights under both the United States and State of Maryland Constitutions." *Id.* at 8–9 ¶ 33.

On October 29, 2025, Plaintiffs filed this suit in the Circuit Court for Baltimore City. *See id.* at 2. The complaint alleges twenty-five counts, including violations of the Victims of Crimes Act (Counts I–III), breach of contract against the State (Counts IV–VI), promissory estoppel (Counts VII–IX), unjust enrichment (Counts X–XII), counts for mandamus (Counts XIII–XV), violations of Article 40 of the Maryland Declaration of Rights (Counts XVI–XVIII), and violations of the First Amendment pursuant to 42 U.S.C. § 1983 (Count XIX–XX), "unconstitutional conditions (Count XXI–XXIII), and a count for a general violation of § 1983 pursuant to Defendants' alleged failure to properly administer VOCA (Counts XXIV–XXV).[4] *See* ECF 3. On February 2, 2026, Defendants removed the action to this Court based on federal question

[4] Each count is asserted against each Defendant individually, resulting in several counts being asserted for the same cause of action (as opposed to one count asserted against multiple Defendants).

jurisdiction. *See* ECF 1, at 1–2. On February 19, 2026, Defendants filed a motion to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF 8. That motion is now ripe for resolution.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)). Presumably, Defendants move under Rule 12(b)(1) in light of their immunity arguments.

"The Fourth Circuit has yet to decide 'whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).'" *Ziegler v. Dunn*, Civ. No. 3:23-480-RCY, 2024 WL 761860, at *3 n.2 (E.D. Va. Feb. 23, 2024). However, "the 'trend' is to view Eleventh Amendment immunity through the lens of Rule 12(b)(1)." *Id.* (quoting *Riddick v. Watson*, 503 F. Supp. 3d 399, 412 n.8 (E.D. Va. 2020)). "This distinction, however, 'makes little practical difference' as in either case the court must assume the truth of the facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Riddick*, 503 F. Supp. 3d at 412 n.8. That is especially so where, as here, the moving Defendants have invoked multiple bases to assert their challenges under Rule 12.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

### A. Plaintiffs voluntarily withdraw Counts I–III, Counts VII–IX, Counts X–XII, Counts XIII–XV, Counts XXI–XXIII, and Counts XXIV–XXV.

In response to Defendants' motion to dismiss, Plaintiffs appear to voluntarily withdraw some of their claims. *See, e.g.*, ECF 11-1, at 4 ("Plaintiffs voluntarily withdraw several of the counts."). For example, Plaintiff unequivocally "acknowledge that Defendants are immune from the claims for promissory estoppel and unjust enrichment, and voluntary withdraws those claims."

ECF 11-1, at 6. However, Plaintiffs appear to condition their withdrawal of certain claims only "[i]n light of the survival" of others:

> In light of the survival of the contract and state and federal constitutional claims, Plaintiffs agree to voluntarily withdraw Counts I-III (violations of VOCA), Counts VII-IX (promissory estoppel), Counts X-XII (unjust enrichment), Counts XIII-XV (mandamus), Counts XXI-XXIII (unconstitutional conditions), and Counts XXIV-XXV (42 U.S.C. § 1983 Claim for Violation of VOCA).

ECF 11-1, at 18. Additionally, Plaintiffs request leave to amend their complaint to the extent that the claims they believe worthy of survival are found to be inadequately pled. *See, e.g.*, *id.* at 12 ("Should this Court find that the Complaint is deficient, Plaintiffs respectfully request the opportunity to amend.").

"Ordinarily, requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend." *Davis v. Screening Reps., Inc.*, Civ. No. 25-1785-BAH, 2025 WL 3551846, at *6 (D. Md. Dec. 11, 2025) (citing *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008)). Moreover, under the local rules of this Court, a party seeking leave to amend a pleading must submit a motion requesting such relief and attach the proposed amended pleading. *See* Loc. R. 103.6 (D. Md. 2025).

Given that the Court ultimately holds that one of the breach of contract counts and one of the First Amendment § 1983 counts survives the motion to dismiss, the Court infers that Plaintiffs would still "agree to voluntarily withdraw" the counts specified above. ECF 11-1, at 18. However, given that not all "the contract and state and federal constitutional claims" survive, *id.*, the Court will permit Plaintiffs fourteen (14) days from the date of this decision to file a proper motion for leave to amend if they so choose. *See infra* Section IV.

### B. Breach of Contract (Counts IV–VI)

#### 1. <u>The Contract and Alleged Breach</u>

"Under Maryland law,[5] to establish a breach of contract claim, the plaintiff must allege: (1) 'that the defendant owed the plaintiff a contractual obligation'; and (2) 'that the defendant breached that obligation.'" *DT Consultants, LLC v. Howmedica Osteonics Corp.*, Civ. No. GLR-17-1697, 2018 WL 3416893, at *3 (D. Md. July 13, 2018) (quoting *Palermino v. Ocwen Loan Servicing, LLC*, Civ. No. TDC-14-0522, 2015 WL 6531003, at *4 (D. Md. Oct. 26, 2015)). Defendants argue that "the complaint does not clearly identify the contract upon which its claims are based" nor "the exact contract provision(s) which Defendants allegedly breached." ECF 8-1, at 15–16. Defendants further assert that the complaint "does not offer any detail as to what 'expenses' or 'services' are 'eligible' for reimbursement under the agreement, or what persons count as 'crime victims' for purposes of the agreement." *Id.* at 16 (citation omitted). Defendants point out that "Plaintiffs could have attached the relevant agreement as an exhibit to the complaint, or could have at least quoted or even paraphrased the specific provisions alleged to be at issue, but they did not do so." *Id.* at 16.

Defendants' arguments for dismissal seem to impose a heightened pleading requirement on Plaintiffs' breach of contract claim, however. The complaint alleges that "HER and the State of Maryland entered into a grant agreement the State of Maryland would reimburse HER for eligible expenses incurred in providing services to crime victims under VOCA." ECF 3, at 6 ¶ 20. Contrary to Defendants' assertion, that allegation does, albeit generally, identify the contract upon which Plaintiffs' claims are based. *Cf.* ECF 8-1, at 15. Moreover, the complaint goes on to allege

[5] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); and then citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). "Under Maryland law, where the contract contains no choice of law clause, courts [ ] apply the law of the jurisdiction where the contract was made." *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 676 (D. Md. 2013) (internal citation and quotation marks omitted).

"HER expended its own funds to provide services to crime victims that were eligible for reimbursement under VOCA" and the State refused to reimburse such expenses, in violation of the grant agreement. ECF 3, at 6 ¶ 21, at 8 ¶ 31. Defendants are correct that the complaint does not identify "the exact contract provision(s) which Defendants allegedly breached" insofar as it does not quote or identify which paragraph of the provisions was breached. ECF 8-1, at 16. But "courts in this District have not required plaintiffs to cite precise contractual provisions in order to state a claim for breach of contract under Maryland law." *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, Civ. No. ELH-16-3431, 2018 WL 1471682, at *9 (D. Md. Mar. 23, 2018) (collecting cases). Moreover, the complaint *does* allege the *substance* of the provision or obligation at issue. *See* ECF 3, at 6 ¶¶ 20–21, at 8 ¶ 31. Accordingly, the Court finds that Plaintiffs have successfully stated a breach of contract claim against the State.[6]

2. Parties to the Contract

Defendants also argue that Counts V and VI, asserted against Moore and Lennig, respectively, should be dismissed because the complaint does not allege that either were "parties to any contract with Plaintiffs." ECF 8-1, at 17. Indeed, in "Counts IV, V, and VI, the complaint says: 'HER and the State of Maryland entered into a valid contract.'" *Id.* (citation omitted). "Thus, a contract is alleged only between HER and the State." *Id.* Defendants further argue that the way that the counts asserted against Moore and Lennig are pled lends further credence to the idea that they are not parties to the contract. *See, e.g.*, ECF 3, at 15 ¶ 96 ("Defendant Moore breached the

---

[6] The Court finds distinguishable the cases Defendants cite in support of dismissal. *See* ECF 8-1, at 16–17. And to the extent that Defendants cite Maryland case law for the pleading requirements applicable to the breach of contract counts, the Court observes that although the elements of any such claim are entirely a matter of state law, federal pleading standards apply in federal court. *See Stutzman v. Krenik*, 350 F. Supp. 3d 366, 387 (D. Md. 2018) ("As to the pleading standard, procedural matters relating to pleading are governed by the Federal Rules of Civil Procedure, not state law." (citing *Swift & Co. v. Young*, 107 F.2d 170, 172 (4th Cir. 1939)).

contract by failing to ensure that the state fulfills its contractual obligations to reimburse HER for eligible expenses."); *id.* at 17 ¶ 109 ("Defendant Lennig breached the contract by failing to ensure that the state fulfills its contractual obligations to reimburse HER for eligible expenses."). By alleging that these Defendants "fail[ed] to ensure that *the state* fulfills *its* contractual obligations" related to reimbursement, *id.*, Plaintiffs' complaint suggests that the State was party to the contract, not Moore and Lennig.

Plaintiffs argue that Defendants "cite no law for th[e] notion" that Defendants Moore and Lennig can be dismissed from a breach of contract action "because they are not parties to the contract." ECF 11-1, at 14. Plaintiffs further assert that "[c]ourts allow breach of contract claims to proceed against state officials as long as those officials are not entitled to sovereign immunity." *Id.* However, it is a basic and well-recognized general principle of contract law that those who are not party to a contract cannot breach it. *See, e.g.*, *Whiting v. William H. Crawford Co.*, 49 A. 615, 617 (Md. 1901) ("The general rule has long been established that one who is not a party to a contract cannot be included in the rights and liabilities which the contract creates, so as to enable him to sue or be sued upon it." (internal quotation marks and citation omitted)); *Porter v. Gen. Boiler Casing Co.*, 396 A.2d 1090, 1094 (Md. 1979) ("The general rule is that one cannot be held to a contract to which he is not a party."). To the extent that the breach of contract counts are brought against Moore and Lennig in their individual capacities, those counts must be dismissed against them because there are no allegations that Moore and Lennig, as individuals, were parties to the agreement alleged. In fact, as explained, the facts as alleged in the complaint run *contrary* to any such assertion.

To the extent that the breach of contract counts are brought against Moore and Lennig in their *official* capacities, however, and thus effectively asserted against the State, the breach of

contract counts asserted against them are not necessarily improper. Yet, they are duplicative. "Because official-capacity suits are 'essentially' claims 'against the [entity],' official-capacity claims 'should be dismissed as duplicative' when the entity is also named as a defendant." *O.W. v. Cabell Cnty. Bd. of Educ.*, Civ. No. 3:24-0070, 2024 WL 3445489, at *9 (S.D.W. Va. July 17, 2024) (quoting *Love-Lane Martin*, 355 F.3d 766, 783 (4th Cir. 2004)). Accordingly, the breach of contract counts insofar as they are brought against Moore and Lennig in their official capacities will also be dismissed.[7]

### C. State Constitutional Claims

#### 1. State Personnel Immunity

"The 'MTCA does not distinguish between constitutional torts and common law torts. Accordingly, the same standards of malice and gross negligence govern' State common law tort claims and violations of State constitutional rights." *Francis v. Maryland*, Civ. No. ELH-21-1365, 2023 WL 2456553, at *22 (D. Md. Mar. 10, 2023) (quoting *Newell v. Runnels*, 967 A.2d 729, 766 n.28 (Md. 2009)). "Moreover, statutory immunity under the MTCA . . . applies to both negligent and intentional torts." *Id.* "[T]he MTCA provides that State personnel are immune from suit for any 'tortious act or omission that is within the scope of the public duties of the [official] and is made without malice or gross negligence, and for which the State [has] waived immunity.'" *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-522(b)). "In that circumstance, the MTCA 'substitutes the liability of the State for the liability of the state employee.'" *Id.* (quoting *Lee v. Cline*, 863 A.2d 297, 307 (Md. 2004)).

[7] Given this conclusion, the Court does not reach Defendants' arguments that Defendants Moore and Lennig have state personnel immunity insofar as the contract claims are asserted against them in their individual capacities. *See* ECF 8-1, at 10–9.

"For purposes of MTCA immunity, 'malice' refers to so-called 'actual malice,' *i.e.*, 'conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Id.* at *29 (internal quotation marks omitted) (quoting *Lee*, 863 A.2d at 311). "To establish malice, a plaintiff must show that the government official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Nero v. Mosby*, 890 F.3d 106, 127 (4th Cir. 2018) (quoting *Bord v. Baltimore Cnty.*, 104 A.3d 948, 964 (Md. App. 2014)).

Plaintiffs argue that they have alleged Moore and Lennig acted with malice in the denial of reimbursement to HER for certain funds. *See* ECF 11-1, at 7–8. Specifically, Plaintiffs allege that Defendants' "actions were done with malice and intent to limit criticism against the current gubernatorial administration." ECF 3, at 34 ¶ 256. Beyond that conclusory statement, nothing in the complaint suggests that either Moore or Lennig denied HER's funding request out of "hate" or "to deliberately and willfully injure" Plaintiffs. *See id.* While it is true that malice is "oftenest inferred from acts and circumstantial evidence," *Henderson v. Md. Nat'l Bank*, 366 A.2d 1, 5 (Md. 1976), and moreover that it is often "a question for the trier of fact," *Newell*, 967 A.2d at 763, the complaint contains little "allegations of specific conduct engaged in by" either Moore or Lennig, *see Francis*, 2023 WL 2456553, at *35. "Even if the allegations, taken in the light most favorable to plaintiff, 'suggest individual negligence and bureaucratic mismanagement and incompetence' or suggest 'a critically important governmental unit not properly doing its job because of underfunding, understaffing, lack of effective leadership and supervision, lack of training, and lack of clear procedures and protocols,' that is not sufficient to indicate 'malice, evil intention, or wanton, wilful, or reckless disregard for human life or the rights of others.'" *Francis*, 2023 WL

2456553, at *35 (quoting *Wells v. State*, 642 A.2d 879, 885 (Md. App. 1994)). Reimbursement denial, taken in the ordinary course of GOCPP's responsibilities, *see* ECF 3, at 6 ¶ 19, even if alleged to be done incorrectly, *see id.* at 6–7 ¶¶ 23–24, does not create a plausible inference of maliciousness on the parts of Moore or Lennig without more details as to their specific conduct. Accordingly, the Maryland constitutional torts alleged against Moore and Lennig in Counts XVII and XVIII must be dismissed.

2. <u>MTCA Notice Requirement</u>

Counts XVII and XVIII, in addition to Count XVI alleging a violation of Article 40 of the Maryland Declaration of Rights against the State, must be dismissed for another reason as well. Defendants argue that "[t]hese claims are barred by statutory immunity because Plaintiffs have not satisfied the Maryland Tort Claims Act," or the "MTCA." ECF 8-1, at 11. Specifically, Defendants argue that Plaintiffs failed to comply with the MTCA's one-year notice provision. *See id.* Defendants are correct that the complaint does not plausibly allege Plaintiffs' compliance with that provision.

"The MTCA provides a limited waiver of sovereign immunity and is 'the sole means by which the State of Maryland and its personnel may be sued in tort.'" *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted). However, "a claimant may not institute an action under" the MTCA unless "the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim," among other things. State Gov't 12-106(b)(1); *Paulone*, 718 F. Supp. 2d at 637 ("This waiver is conditioned upon, *inter alia,* the injured party filing notice of its tort claim with the State Treasurer's Office within one year after the injury.").

If "a claimant fails to submit a written claim in accordance with subsection (b)(1)," then for good cause and "on motion" by the claimant "the court may entertain an action under this

subtitle unless the State can affirmatively show that its defense has been prejudiced by the claimant's failure to submit the claim." State Gov't § 12-106(c)(1). Moreover, the notice requirement "does not apply if, within 1 year after the injury to person or property that is the basis of the claim, the State has actual or constructive notice of: (i) the claimant's injury; or (ii) the defect or circumstances giving rise to the claimant's injury." *Id.* § 12-106(c)(2). "The Court may not 'entertain claims by claimants who fail to exhaust their administrative remedies before the Treasurer.'" *Paulone*, 718 F. Supp. 2d at 637 (citation omitted). "A plaintiff must show actual or 'substantial compliance' with the notice requirement such that the State has 'requisite and timely notice of facts and circumstances giving rise to the claim.'" *Id.* (quoting *Condon v. Maryland–University of Maryland*, 632 A.2d 753, 760 (Md. 1993)).

Defendants argue that "[t]he complaint does not allege that Plaintiffs submitted a claim notice to the Maryland Treasurer." ECF 8-1, at 11. Plaintiffs respond that "the Complaint alleges that Plaintiff Natasha Guynes emailed Defendant Lennig requesting reimbursement of the precise amount of money now sought in this Complaint—and the correspondence were ignored." ECF 11-1, at 10. Accordingly, Plaintiffs assert that "Defendants thus received notice of Plaintiffs' injury in August 2025," sufficient to satisfy the notice requirement. *Id.* at 11. And in the event that "these allegations fail to satisfy actual or constructive notice under § 12-106(c)(2), Plaintiff respectfully requests leave to amend to set out in even more detail the extensive correspondence she undertook to convey the circumstance of her injuries to Defendants." *Id.* Plaintiffs further argue that Plaintiffs have "sufficiently allege that Defendants Moore and Lennig acted with malice or gross negligence," meaning that the MTCA's notice requirement does not apply at all in this suit. *Id.* (citing *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 849 n.37 (D. Md. 2012)). Defendants

do not respond to these counterarguments in their reply, except to argue that "Plaintiffs did not plead facts sufficient to show malice or gross negligence." ECF 12, at 5.

"[T]he MTCA's notice provision constitutes a pleading requirement." *Warren v. St. Mary's Cnty.*, Civ. No. DLB-25-3937, 2026 WL 1980907, at *11 (D. Md. July 9, 2026) (citing *Singleton v. Md. Tech. Dev. Corp.*, Civ. No. JMC-22-999, 2022 WL 4104201, at *6 (D. Md. Sept. 8, 2022), *aff'd*, 103 F.4th 1042 (4th Cir. 2024)); *see also Renn v. Bd. of Comm'rs of Charles Cnty.*, 352 F. Supp. 2d 599, 603 (D. Md. 2005) ("[N]otice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action."). Plaintiffs have not pled satisfaction of the MTCA notice provision. *See generally* ECF 3.

Moreover, the Court does not find that the allegations in the complaint give rise to an inference of "actual or constructive notice." State Gov't § 12-106(c)(2). "This exception, which excuses a failure to provide written notice when the State had actual or constructive notice of the claim, is generally referred to as the doctrine of substantial compliance." *Brooks v. St. Charles Hotel Operating, LLC*, Civ. No. DLB-23-0208, 2023 WL 6244612, at *5 (D. Md. Sept. 26, 2023) (citing *Francis v. Maryland*, Civ. No. ELH-21-1365, 2023 WL 2456553, at *26 (D. Md. Mar. 10, 2023)). "Substantial compliance 'entails a communication that provides the State requisite and timely notice of facts and circumstances giving rise to the claim.'" *Id.* (quoting the same). "But the doctrine is 'narrowly construed.'" *Id.* (quoting the same). Plaintiffs suggest that Guynes' "August 22, 2025" email to Lennig "requesting reimbursement of funds due in the amount of $218,861.11" constitutes substantial compliance with the MTCA's notice requirement. ECF 3, at 7 ¶ 26; ECF 11-1, at 11 ("Defendants thus received notice of Plaintiffs' injury in August 2025[.]"). This Court has previously held, "[t]he notion that a State agency's awareness of an injury or

occurrence satisfies the statutory notice requirement is misguided. The State, of course, functions through its agencies, departments, and their personnel." *Francis*, 2023 WL 2456553, at *27. However, those State agencies and actors "have interests and concerns that differ markedly from those of the Treasurer, who has fiscal concerns." *Id.* "It is the Treasurer who 'considers the fiscal consequences of the claim, and then decides which of several options to pursue.'" *Id.* (quoting *Chinwuba v. Larsen*, 790 A.2d 83, 99 (Md. App. 2002), *aff'd in part and rev'd in part*, 832 A.2d 193 (Md. 2003)). Moreover, even if the Court were to consider Guynes' August 2025 communication as substantial compliance with the MTCA's notice provision, it is not clear to the Court that the email contained any reference to the First Amendment retaliation claim alleged here. *See* ECF 3, at 7 ¶ 26 ("On August 22, 2025, Plaintiff Guynes sent an email on behalf of HER to Defendant Lennig *requesting reimbursement of funds* due in the amount of $218,861.11. This letter was ignored. Plaintiff Guynes had previously reached out directly to Defendant Moore's office directly *to address the funding issues* on multiple occasions." (emphasis added)).

Finally, the Court does not conclude that the notice requirement is inapplicable to this action altogether because it finds that Plaintiffs have failed to plead malice or gross negligence on the part of either Moore or Lennig. *See supra* Section III.D.1; *see also Francis*, 2023 WL 2456553, at *28 (explaining why "the MTCA's notice requirement is not necessary in a suit against individual State personnel in which it is sufficiently alleged that the defendants acted with malice or gross negligence"). Accordingly, Counts XVI, XVII, and XVIII must be dismissed for failure to provide the requisite notice under the MTCA.

### D. First Amendment Retaliation § 1983 Claims

Plaintiffs bring First Amendment claims against Moore and Lennig pursuant to 42 U.S.C. § 1983, alleging that Defendants retaliated against them for exercising their freedom of speech. *See* ECF 3, at 36 (Count XIX – First Amendment violation under §1983 asserted against Moore),

at 38 (Count XX – First Amendment violation under §1983 asserted against Lennig). For example, in Count XIX Plaintiffs allege that their "social media posts criticizing the policies and practices of the" GOCPP and the "communications with public officials criticizing" the same "constitute speech protected by the First Amendment," and that "Defendants took adverse action against Plaintiffs that would chill a person of ordinary firmness from continuing to engage in the protected speech." ECF 3, at 36–37 ¶¶ 274–76. Specifically, "Defendants terminated the reimbursement of funds to Plaintiff HER," which Plaintiffs allege "occurred shortly after Plaintiffs' social media posts and communications." *Id.* ¶¶ 277, 279. Plaintiffs further aver that there "was no legitimate, non-retaliatory reason for the termination of funding." *Id.* ¶ 280. Plaintiffs also assert that "[a] representative of Defendant Moore's office stated that the social media posts were becoming a problem." *Id.* ¶ 281; *id.* at 39 ¶ 295.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). "A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus.*, 202 F.3d at 686). "[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* at 500 (quoting *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)). Further, in order to establish the requisite "causal connection, a plaintiff in a retaliation case must

show, at the very least, that the defendant was aware of her engaging in protected activity." *Id.* at 501 (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Knowledge alone, however, is not enough—"[t]here must also be some degree of temporal proximity to suggest a causal connection." *Id.* (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004); *Dowe*, 145 F.3d at 657).

Defendants advance two arguments as to why the complaint "fails to plead a valid claim for retaliation based on free speech." ECF 8-1, at 21. First, Defendants argue that Plaintiffs' First Amendment claims fail to state a claim against Moore and Lennig specifically, given that "Plaintiffs allege that the 'Defendant State of Maryland' took adverse action against Plaintiffs by not reimbursing HER." ECF 8-1, at 22 (citing ECF 3, at 31 ¶ 231, at 33 ¶ 247, at 35 ¶ 263). Plaintiffs counter that "[t]o bring a section 1983 claim against state officials in their individual capacity, it suffices to plead 'that the official charged acted personally in the deprivation of the plaintiff's right.'" ECF 11-1, at 15 (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Plaintiffs argue that the complaint does so by alleging that Lennig was Executive Director of the office responsible for distribution of funds under VOCA, ECF 3, at 27 ¶ 194, was "made aware of the promise" of funds "on multiple occasions," *id.* at 22 ¶ 150, and that the "State of Maryland at the direction of Defendant Lennig took adverse action against Plaintiffs," *id.* at 35 ¶ 263. The complaint alleges that Moore was also "made aware" of the funding obligation "on multiple occasions," *id.* at 20 ¶ 135, and that Moore's office endorsed the refusal to address the funding and that a member of his staff identified Guynes' social media posting as "becoming a problem," *id.* at 33 ¶ 249.

Defendants respond that making an individual aware of an obligation "is not the same as making the Governor [or Lennig] aware of the social media posts." ECF 12, at 4–5. According

to Defendants, "the only specific factual allegations that connect to the social media posts are that Plaintiffs 'tagged' Governor Moore and [GOCPP] in their social media posts, and that an unnamed member of the Governor's staff made a comment, at an unspecified time and place to an unspecified party or parties, that Plaintiffs' posts 'were becoming a problem.'" *Id.* (citations omitted). Defendants argue that "[t]agging someone in a social media post, particularly a Governor or a government agency, does not prove that such person or agency is aware of the post." *Id.* And because "the allegation about the comment by an individual on the Governor's staff is so devoid of detail or context," Defendants argue that "no meaningful inferences can be drawn from it." *Id.*

"In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Consequently, Moore and Lennig "must have had personal knowledge of and involvement in the alleged deprivation of [plaintiff]'s rights in order to be liable." *Id.* Even though the complaint is not greatly detailed in this respect, Plaintiffs nevertheless plausibly allege that Lennig controlled and contributed to the fund denial process at issue, given Lennig's position as Executive Director of GOCPP, the office which Plaintiffs allege "has ultimate responsibility for ensuring that state agencies comply with federal and state law" and appears to have a role in determining eligibility for reimbursement pursuant to VOCA. ECF 3, at 6 ¶¶ 19, 23.

But Moore's alleged involvement is far more tenuous. Plaintiffs allege that Moore, "as Governor of Maryland," is "ultimately responsible for GOCPP and has ultimate responsibility for ensuring that state agencies comply with federal and state law." *Id.* at 6 ¶ 19. If that was sufficient

for personal involvement, however, the Governor could be considered personally involved in all kinds of alleged wrongs in which he played no role. *See Bunting v. Cooper*, Civ. No. 5:17-CT-03098-D, 2017 WL 5639948 (E.D.N.C. May 23, 2017) ("Governor Cooper cannot be held liable under § 1983 simply because of the position he occupies as Governor of North Carolina."), *report and recommendation adopted*, No. 5:17-CT-3098-D, 2017 WL 2692617 (E.D.N.C. June 22, 2017), *aff'd*, 700 F. App'x 315 (4th Cir. 2017). And although Plaintiffs allege that Guynes "had previously reached out directly to [ ] Moore's office directly to address the funding issues on multiple occasions," the only response from Moore's office alleged in the complaint is "that Defendant Moore 'has complete faith in Ms. Lennig's leadership.'" ECF 3, at 7 ¶ 26. The complaint is devoid of factual allegations that Moore personally played a role in the denial of funds alleged.[8] Accordingly, Count XIX will be dismissed.

Second, Defendants argue that Plaintiffs "fail to adequately allege a causal connection between their speech and the alleged adverse action." ECF 8-1, at 22. According to Defendants, "[t]he only specific factual allegations that Plaintiffs offer in support of that claim is that '[t]he termination of funding occurred shortly after Plaintiffs' social media posts and letters to public officials criticizing' GOCPP." *Id.* (quoting ECF 3, at 31 ¶ 235, at 33 ¶ 251, at 25 ¶ 267). Defendants argue that Plaintiffs have failed to allege Defendants were "even aware of Plaintiffs' social media posts or letters," and "do not specifically quantify 'shortly after'" or "allege a specific date on which funding was terminated." *Id.* at 22–23 (citation omitted). Plaintiffs respond that "the Complaint explains that Plaintiffs communicated their complaints directly to the Defendants

[8] That an unidentified member of Moore's office allegedly expressed an opinion "that the social media posts were becoming a problem," ECF 3, at 36 ¶ 271, without facts identifying to whom the statement was made or in what context, does not persuade the Court otherwise.

and that Defendants' agents conveyed to Plaintiffs that they knew about (and were unfavorably disposed to) the speech in question." ECF 11-1, at 17.

In *Constantine v. Rectors and Visitors of George Mason University*, the Fourth Circuit considered whether the plaintiff, a student in a professor's constitutional law course at George Mason University ("GMU"), had stated a First Amendment retaliation claim when she alleged that she was retaliated against for criticizing GMU's grade appeals policies. *See* 411 F.3d at 478. In considering whether the plaintiff had sufficiently pled the causation element of such a claim, the Fourth Circuit noted that she alleged that she "made her complaints personally to several of the defendants and other GMU officials." *Id.* at 501. Although the plaintiff did "not specify the date" she complained about her exam and the grade appeals process, the complaint did allege a "(somewhat vague[]) [ ] chronology of events spanning roughly four months from the date of the initial exam to the filing of [her] lawsuit." *Id.* Concluding that such a time span "adequately allege[d] a causal connection between her First Amendment activity and the defendants' alleged misconduct," the Fourth Circuit observed that four months was less in time than the "nine-month lapse" that had "created a 'very close question'" in a separate case. *Id.* (quoting *Price*, 380 F.3d at 213).

*Constantine* makes clear that a plaintiff need not always allege precise dates as to the conduct underlying her retaliation claim to survive a motion to dismiss. *See id.* Nevertheless, some temporal proximity needs to be shown, and that requires at least a general timeline. *See id.* Here, Guynes alleges that she began contacting elected officials about her concerns related to GOCPP in "January 2024." ECF 3, at 8 ¶ 28. More recently, she "made a social media post describing the frustrations with GOCPP" in "September 2024," *id.* ¶ 29, along with comments on other social media posts around that time as well, *id.* ¶ 30. "In April 2025," the complaint alleges

that "GOCPP denied a budget modification for HER" after such funds had already been expended by HER and despite the fact that "[t]he initial funding request was made in February 2025," *id.* at 8 ¶ 31. Interpreting the complaint in the light most favorable to Plaintiffs, the time alleged between the reimbursement denial and Guynes' social media post is approximately seven months. However, given that GOCPP was tagged in the post, *id.* ¶ 29, and that this is a shorter amount of time than the nine-month lapse the Fourth Circuit ultimately found sufficient in *Price*, 380 F.3d at 213,[9] the Court finds causation sufficiently alleged here. Count XX of the complaint thus survives Defendants' motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Because Plaintiffs have voluntarily withdrawn Counts I–III (violations of VOCA), Counts VII–IX (promissory estoppel), Counts X–XII (unjust enrichment), Counts XIII–XV (mandamus), Counts XXI–XXIII (unconstitutional conditions), and Counts XXIV–XXV (42 U.S.C. § 1983 claim for violation of VOCA), the Court will dismiss those counts.

The Court also will dismiss Count V (breach of contract against Moore) and Count VI (breach of contract against Lennig), Counts XVI–XVIII (violation of Article 40 of the Maryland Declaration of Rights), and Count XIX (42 U.S.C. § 1983 claim for violation of the First

[9] Of importance in *Price*, however, was the fact that though the allegedly retaliatory action came nine to ten months after the *Price* plaintiff's protected activity, it came at the "first available opportunity" for the defendant to retaliate. *Price*, 380 F.3d at 213. The Court acknowledges that it is not as clear here that Plaintiffs' April 2025 final denial of a requested budget modification represented the first opportunity for Defendants to retaliate, particularly since Plaintiffs allege that the denial followed multiple "return[s]" of the same request. ECF 8, at 7 ¶ 31. Nevertheless, since it is fair reading of the allegations that Plaintiffs have plausibly alleged that the denial came at the earliest opportunity, and again noting that the timeline is shorter than the one in *Price*, this claim survives.

Amendment against Moore). However, Count IV (breach of contract against the State) and Count XX (42 U.S.C. § 1983 claim for violation of the First Amendment against Lennig) survive.

To the extent that Plaintiffs seek to amend their complaint regarding any breach of contract, Article 40, or First Amendment claims in light of this opinion, they have fourteen (14) days from the date of this decision to move for leave to do so. Plaintiffs are reminded that any such motion must comply with Local Rule 103.6. *See* Loc. R. 103.6 (D. Md. 2025). Defendants shall file an answer fourteen (14) days after the resolution of any motion for leave to amend filed *or* seven (7) days after the passing of that deadline if no such motion is filed.

A separate implementing order will issue.

Dated: August 21, 2026

/s/
Brendan A. Hurson
United States District Judge